Smith, J.
This case comes into this court by appeal from the court of common pleas, and the issues are thus made. On the 19th of October, 1883, the plaintiff filed in said court a petition for the partition of the real estate of hi-s father, Medard Fels, who had died a short time before, alleging that he, his brother, George W. Fels, and his five sisters', were each seized in fee-simple of an undivided one-seventh of said, real estate, subject to the dower of his mother, Mary Fels, widow of said deceased. In the petition there was no allegation that any of the heirs of Medard Fels had received any advancement from him in his life-time.
George W. Fels, one of the defendants, filed an answer, alleging that the plaintiff had received an advancement from his father of $1,100, and the five daughters, by way of answer and cross-petition, alleged that George W. Fels had also received an advancement from him of $2,700. George W. Fels then filed an amended answer and cross-petition denying that he had received any advancement from his father, but alleging that each of his five sisters had, to the amount of about $1,000. This they by their reply denied. John W. Fels did not deny that he had received an advancement as claimed.
At the trial of the case here, no evidence was offered tending to prove an advancement to either of the daughters, and the case was heard on the issue as to whether George W. Fels had received an advancement from his father. For the purpose of showing that he had, an account-book of the father was produced, and offered in evidence, with the testimony of Wm. Autenrich, the husband of one of the daughters, that it was partly in the handwriting of Geo. W. Fels himself, and partly *422 in that of Medard Fels. The book of account thus offered was evidently one in which thedntestate kept his general accounts with those with whom he had dealings. It contains á large number of accounts with other persons, with charges against and credits to them. Among others is a large account covering a period of several years, with Autenrich, the witness -referred to, showing charges against him, for rent, and for other matters, with credits of cash paid to the intestate by him, a'nd a large number of items of credit of cash, and boarding furnished by him to Geo. W. Fels, and which brought together in one item, are charged against the latter in the account with him offered in evidence and contained in this same book. There is, however, in this book, no account with any of the other children of Medard Fels, and nowhere is there to be found in it, what purports to be an advancement charge, against any one of his children.
The account with George W. Fels referred to, is one in the ordinary form of a debit and credit account. It commenced several years before 1877, and the greater part of it (in length, at least) is shown to be in the handwriting of the son himself. This part closes in 1877, and to what appears in the handwriting of the son, are added several items in the handwriting of the father, charging him in one item with the sums brought from Autenrich’s account, amounting to several hundred dollars, and with two checks of $450 each, and crediting him with two items of cash of considerable amount. The greater part of this account accrued more than six years prior to the death of Medard Fels. The nature of the account itself, and of the character of the items charged in it will be more fully referred to hereafter.
Geo. W. Fels offered himself as a witness to show that this was not an advancement to him, by showing conversations between himself and his father in his life-time, but objection being made, that he was not a competent witness, as to such matters, under Sec. 5242, Rev. Stats., he was not permitted to give such evidence.
The question for decision then is, whether on the evidence submitted, the court should find that George W. Fels should be charged with the balance appearing to be due on that account, as” an advancement made to him by his father.
*423 Sec. 4169, Rev. Stats., provides, that if any estate, real or personal, has been given by any intestate in his life-time to any child or children of such intestate, or their descendants, it shall be considered and held to be a part of the estate of the intestate so far as it regards the division and distribution thereof, and be taken by such child towards his or her share of the estate.
It is clear in Ohio, that where a father with his own means buys land or property and has the title made to a child, that this is prima facie an advancement to such child. But as stated in the case of Creed v. Lancaster Bank, 1 O. S., 10, “ this is a mere abstract presumption, that may be rebutted by “ circumstances, or evidence going to show a different intention-, and each case has to be determined by the reasonable presumptions arising from all the acts and circumstances connected with it.” And from this it would seem, that in this, as in other states, the question whether a particular transaction or dealing between a parent and child, by which one receives from the other money or other property, constitutes an advancement to the child or a gift to him, or a debt against him, depends upon the intention of the parties at the time— in some cases perhaps on the intention of the parent alone— in others on the intentions of both of the parties.
For if money is actually given to a child as a gift, and was so understood at the time by both of them, we imagine that the father by a mere entry of it on his account-book as an advancement, could not make it so; or by a declaration that he wishes it to be so considered. But he has. the right to determine at the time the transfer is made, how it shall be considered, and it then depends upon his intention, which is to be determined by evidence, or shown by the circumstances of the case.
And we are of opinion that in analogy to this rule of the law, as to the presumption which arises on a conveyance of land by a, father to a sen, or where he has the title made directly to him, that prima facie, this is an advancement to him, that if it were shown in a given case that a father had turned over to his son, who had arrived at full age, a very considerable sum of money (taking into account the amount *424 of his estate, he having other children with equal claims upon his bounty) for the settlement of the son in life, or to invest in real estate, or it may be to be used for his professional education, or to pay a debt, and nothing else be shown, that the presumption would be, that it was intended as an advancement, and such seems to be the tenor of the authorities cited from other states.
On the other hand, when it appears that the son is at the time living in the family of the father, and is not yet settled in life, and small payments are made to him from day to day,- or from time to time, for his living expenses, it seems to us that the presumption that they were advancements would not arise, oratleast, would be greatly weakened; indeed theauthorities cited are to the effect, that sums paid to a child for purposes of pleasure or amusement, or for clothing and such like personal expenses, are not to be regarded as advancements, without other proof that such was the intention. 40 Pa. St., 57; 8th Allen, 411; 11th Iredell, N. C. (L.), 48.
What is the effect of this account of Medard Fels against his. son? Our statute, section 4172, recognizes the fact, that the intention to make an advancement to a child, may be shown,. prima facie, at least by “a charge thereof made by an intestate.” And certainly, if on his book of account, or in other equally authentic manner, a father states that he has made an advancement to a child of a certain amount or value, this, in the absence of anything to the contrary, would be taken as true.
Such, however, is not the fact in the case before the court. As I have before said, the account from which we are asked to infer the intention of the father, does not, in any way whatever, pretend or allege, that the items contained in it were advanced to him on account of his interest in his father’s estate, or were to be accounted for by him after his death, but is in the ordinary form of a money charge against him, of moneys paid to or for him, with items of credit to him for cash repaid thereon. Then too the character of the charges in many instances is not such as are usual, where an advancement is intended.. Many of them a-re of cash charged for articles purchased (extending over a period of several years), less in amount *425 than $1, and ranging from five cents up — they are sums paid for hats, boots, clothing, memorandum and other books, for his professional education, and for his boarding during the time he was at the medical college, with a few other items of cash of considerable size. And many of them would seem clearly to be of that character, which the law, according to the authorities cited, would not presume to have been intended as advancements.
Another fact appears from the testimony given, which, although negative in its character, greatly strengthens the conclusion that the father did not intend this to be counted as an advancement against the son. Aside from the fact that there is no attempt by those claiming it to be such, to show that the father ever declared that it was, it appeared from the cross-examination of Autenrich, a son-in-law of the deceased, who was very familiar with this and the other accounts and business affairs of Medard Fels, and who furnished to the son many of the items charged in this account, at the request of the father, that even to him the old gentleman had never made any such claim or declaration. If such had been the intention of the father or the arrangement between him and his son, it would have been most natural for him to have said so to his son-in-law, or to some of his other children interested in the settlement of his estate and in the advancements made to them — but nothing of this kind appears.
Surely, on the face of the account itself^ without anything to explain or change its apparent meaning, it is an ordinary charge made by one person against another, and on which an action would lie, and if nothing to the contrary appeared» and the proof showed the payment of the money by the father, to or for the son, a recovery might be had thereon, and the court in such case would not be justified in treating it as an advancement to the sou, from the simple fact that such relation existed between them. 40 Pa. St., 57; 2 Pick., 337; 20 Conn., 322; 2 Grant’s Cases, Pa., 404.
Can this account, or any part of it, be deducted as a debt from the share of the son, in the land sought to be partitioned, as claimed by counsel for the opposing parties? We think not. There are two cases cited from the Penn. Reports (57 Pa. St., *426 179, and 80 Pa. St., 429), which seem to recognize and hold that this may be done. Both of these were appeals from the probate court, in which the settlement of the whole estate of the intestate had been had, and the decision may have been, and we think probably, was, founded on the peculiar practice in that state.
Campbell, Bates & Bettman, for plaintiff.
Wúlsin & Perkins, for daughters.
Carr & Dengler, for George W. Fels.
But there are strong reasons why that course can not properly be pursued here. If it is an advancement, it is to be counted as a part of the real estate (the personal property having been expended in payment of the debts of the intestate), and the grantee of John W. Fels, who has taken his interest in the real estate, would be entitled to his share thereof. If it is a debt, it goes to the administrator of Medard Fels, to be divided between his widow and children. And the question whether it is a valid debt, is one not raised by the pleadings, and the son has had no opportunity to contest that question. The decree will be that the amount of this account is not to be considered as an advancement against George W. Fels, but it will' reserve any right the administrator of the estate may have to sue for, or recover the same or any part of it which may be due and payable.